IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CONTINENTAL WESTERN INSURANCE
COMPANY, a foreign corporation,

      Plaintiff,

vs.                                  No. CIV 05-0067 RB/RLP

PIMENTEL & SONS GUITAR MAKERS,
INC., a New Mexico corporation, LORENZO
PIMENTEL, RICK PIMENTEL and ROBERT
PIMENTEL,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Plaintiff's ("Continental's") Motion for Summary

Judgment (Doc. 11), filed on April 26, 2005. Jurisdiction is founded upon 28 U.S.C. § 1332. Having

considered the submissions of the parties, relevant law, and being otherwise fully advised, I find that

the motion should be granted as to bodily injury coverage, but otherwise denied.

## I.      Background.

Continental issued a commercial general liability insurance policy to Pimentel & Sons Guitar

Makers, Inc. ("Pimentel & Sons"), effective from November 25, 2003 through November 25, 2004.

(Pl. Undisputed Facts, ¶ 1.) On April 1, 2004, Pimentel & Sons filed a Complaint in the United States

District Court for the District of New Mexico, styled *Pimentel & Sons Guitar Makers, Inc. v. Hector

Pimentel, et al.*, and numbered CIV 04-0360 JB/RLP ("underlying suit"). (Pl. Am. Compl. Ex. A.)

The defendants in the underlying suit are Hector Pimentel, Danette Lovato-Pimentel, and Danette I.

Lovato-Pimentel Music Enterprises, Inc. ("Pimentel Co-defendants"). (*Id.*) Lorenzo Pimentel is the

father of Rick Pimentel, Robert Pimentel, and Hector Pimentel.  (*Id.*)  Danette Lovato-Pimentel is the former spouse of Hector Pimentel.  (*Id.*)

In the underlying suit, the Pimentel Co-defendants filed separate counterclaims against Pimentel & Sons.  (Pl. Am. Compl. Exs. B and C.)  In addition, Hector Pimentel filed a third party complaint against Lorenzo Pimentel, Rick Pimentel, and Robert Pimentel.  (Pl. Am. Compl. Ex. B.)

For their counterclaims, the Pimentel Co-defendants alleged State of New Mexico service mark infringement, common law service mark infringement, violation of the New Mexico Unfair Trade Practices Act, unfair competition under 15 U.S.C.§ 1125(a)[1] ("Lanham Act"), reverse confusion under the Lanham Act, intentional interference with business relations, malicious abuse of prosecution, prima facie tort, and breach of contract.  (Pl. Am. Compl. Ex. B.)  For his third party complaint against Lorenzo Pimentel, Rick Pimentel, and Robert Pimentel, Hector Pimentel alleged intentional infliction of emotional distress, prima facie tort, and breach of contract.  (*Id.*)  The Pimentel Co-defendants seek damages and declaratory relief.  (*Id.*)

Pimentel & Sons, Lorenzo Pimentel, Rick Pimentel, and Robert Pimentel ( collectively "the Pimentels") tendered the defense of the counterclaims and third party claim to Continental. Continental decided to defend under a full reservation of rights.  On January 14, 2005, Continental sent reservation of rights letters to the Pimentels, detailing the reasons for the reservation of rights. (Pl. Mot. for Summ. J. Exs. A and B.)

On January 21, 2005, Continental filed this action for a declaration of rights under the policy that there is no coverage in connection with the underlying suit.  On February 3, 2005, Continental

_____

[1]Section 43(a) of the Lanham Act prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. *See* 15 U.S.C. § 1125(a).

filed an Amended Complaint.  On April 26, 2005, Continental filed a Motion for Summary Judgment, arguing that the claims against the underlying defendants do not fall within policy definitions and that policy exclusions bar coverage.  Continental seeks reimbursement for defense costs and attorney fees expended on behalf of the Pimentels.

## II.     Counterclaims and Third Party Complaint.

In support of the counterclaims and third party complaint, the Pimentel Co-defendants allege as follows.  Prior to 1989, Hector Pimentel owned a business called "Hector Pimentel Guitar Center, Inc."  (Pl. Am. Compl. Exs. B & C.)  In 1989, the predecessor to Pimentel & Sons filed a trademark infringement suit against Hector Pimentel in this Court.  *Id.*  The parties settled that case and the Court issued a stipulated Order and Judgment.  (Order and Judgment, *Lorenzo Pimentel and Sons Limited Partnership v. Hector Pimentel Guitar Center, Inc.*, No. CV 88-582, Sept. 26, 1989.)

The 1989 Order and Judgment provided, inter alia, that Hector Pimentel could conduct business under a name, d/b/a, trademark or trade name containing the word "Pimentel" only if (1) the name did not include the word guitar or any other word suggestive of the making or selling of guitars, (2) any printed version of the name contained a disclaimer that it was not associated with Pimentel & Sons, and (3) a sign in any place of business stating that "[w]e are not affiliated in any way with Pimentel and Sons, Guitar Makers."  *Id*.

The Pimentel Co-defendants allege that Hector Pimentel established his own valuable recognition as a nationally known celebrity musician by performing at numerous public engagements as HECTOR PIMENTEL.  (Pl. Am. Compl. Exs. B and C.)  In 1993, Danette Infania Lovato-Pimentel met Hector Pimentel and agreed to represent him in order to promote and sell his music,

goods, and entertainment services.  (*Id.*)  As part of this representation, the Pimentel Co-defendants adopted and used the marks PIMENTEL MUSIC, HECTOR PIMENTEL MUSIC, PIMENTEL MUSIC ENTERPRISES, and/or HECTOR PIMENTEL MUSIC ENTERPRISES (collectively, the "Hector Pimentel Marks").

From 1994, the Pimentel Co-defendants extensively promoted the Hector Pimentel Marks. (Pl. Am. Compl. Exs. B and C.)  During this time, Pimentel & Sons never asserted any rights to the Hector Pimentel Marks and accepted and encouraged the promotional efforts.  (*Id.*)  Pimentel & Sons did not enforce the provisions of the 1989 Order and Judgment that required Hector Pimentel to disclaim any association with Pimentel & Sons.  (*Id.*)

Danette Pimentel and Hector Pimentel were married in 1995.  (Pl. Am. Compl. Exs. B and C.)  In 1996, Ms. Pimentel and Hector Pimentel obtained a certificate of service mark registration for the State of New Mexico for the marks, PIMENTEL MUSIC ENTERPRISES and HECTOR PIMENTEL.  (*Id.*)  In 2000, the Pimentel Co-defendants formed a New Mexico corporation called "Hector Pimentel Music Enterprises, Inc."  (*Id.*)

Danette Pimentel and Hector Pimentel divorced in 2003.  (Pl. Am. Compl. Exs. B and C.)  Their Marital Settlement Agreement required Ms. Pimentel to rename "Hector Pimentel Music Enterprises, Inc."  (*Id.*)  On September 25, 2003, Danette Pimentel renamed the business to "Danette I. Lovato-Pimentel Music Enterprises, Inc."  (*Id.*)  By agreement between Ms. Pimentel and Hector Pimentel, Ms. Pimentel continued to use the name "Hector Pimentel" to represent herself and her business.  (*Id.*)

In November 2003, Lorenzo Pimentel approached Hector Pimentel and directed his attention to an advertisement in the 2004 telephone directory for "Hector Pimentel Classical Guitarist," which

listed Ms. Pimentel's telephone number.  (Pl. Am. Compl. Exs. B and C.)  Lorenzo Pimentel asked Hector Pimentel what Hector intended to do about the advertisement because Hector and Ms. Pimentel were divorced.  (*Id*.)  Hector responded that the advertisement was a good advertisement for his entertainment goods and services and provided business to financially support his children.  (*Id*.)

Later that day, as Hector Pimentel provided a guitar lesson at Pimentel & Sons, Robert Pimentel summoned Hector outside of the lesson room to review the 2004 telephone directory.  (Pl. Am. Compl. Exs. B and C.)  Robert asked Hector if Hector was going to do anything about it.  (*Id*.)  Hector replied that he was not going to do anything because the advertisement was good for him.  (*Id*.)  Robert replied that, if Hector was not going to do anything about the advertisement, then Pimentel & Sons would.  (*Id*.)

On January 8, 2004, the Pimentel Co-defendants received a cease and desist letter from counsel for Pimentel & Sons.  (Pl. Am. Compl. Exs. B and C.)  The letter alleged that Ms. Pimentel had recently started to use the name PIMENTEL in business and advertisements.  (*Id*.)  On February 19, 2004, the Pimentel Co-defendants responded to the cease and desist letter, requesting all documents evidencing the Pimentel Co-defendants had only recently started to use the mark.  (*Id*.)  No response was received.  (*Id*.)

In January 2004, Pimentel & Sons intentionally erected a banner within its facilities prominently displaying the mark, PIMENTEL MUSIC, intentionally modified its website to display the mark, PIMENTEL MUSIC, and intentionally used the PIMENTEL MUSIC mark to advertise their guitar instruction services and performances in *Alibi*, an Albuquerque weekly entertainment publication.  (Pl. Am. Compl. Exs. B and C.)  Prior to 2004, Pimentel & Sons had not adopted or

used the mark, PIMENTEL MUSIC. (*Id*.)

On February 24, 2004, as Hector Pimentel provided a guitar lesson, Rick Pimentel requested Hector sign documents foregoing his right to use the mark, PIMENTEL MUSIC. (Pl. Am. Compl. Exs. B and C.) Hector refused and returned to his guitar lesson. (*Id*.) Subsequently, Rick and Robert Pimentel interrupted the lesson and asked Hector to speak with Pimentel & Sons' attorney by telephone. (*Id*.) The attorney demanded that Hector Pimentel execute certain documents foregoing his rights to use the mark, PIMENTEL MUSIC, or he and Ms. Pimentel would be sued. (*Id*.) Hector refused. (*Id*.)

On February 25, 2004, upon Hector's arrival at the Pimentel & Sons facility to provide guitar lessons, Robert offered Hector a concert guitar valued at $10,000.00 and the rights to use the name, Hector Pimentel Classical Guitarist, in exchange for his signature on documents relinquishing his rights to the mark, PIMENTEL MUSIC. (Pl. Am. Compl. Exs. B and C.) Upon Hector's continued refusal, Rick evicted Hector from the premises, demanded return of his keys to the facility, and threatened to arrest Hector. (*Id*.)

The Pimentel Co-defendants allege, inter alia, that Pimentel & Sons knowingly and unfairly traded on the reputation of good will of the Hector Pimentel Marks and attempted to pass off entertainment services under the Hector Pimentel Marks with the intent to deceive the public. (Pl. Am. Compl. Exs. B and C.) The Pimentel Co-defendants allege that the use of the Hector Pimentel Marks by Pimentel & Sons has caused the Pimentel Co-defendants diminution or loss of the marks' identity and good will. (*Id*.)

### III.    Summary Judgment Standard.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'"  *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Id.*

### IV.    Discussion.

### A.    Choice of Law.

Continental contends that New Mexico law applies.  The Pimentels contend that Texas law governs because Continental issued the policy in Texas.  The policy does not contain a choice of law provision.  (Pl. Am. Compl. Ex. A.)

"A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state."  *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).  In the absence of a choice of law provision, New Mexico choice of law rules provide that contracts are interpreted according to the law of the place where the final act necessary to the formation of the contract occurred, also known as the *lex loci contractus* rule.  *State Farm Mut. Auto. Ins. Co. v. Ballard*, 132 N.M. 696, 698, 54 P.3d 537, 539 (2002); *State Farm Mutual Insurance Co. v. Conyers*, 109 N. M. 243, 247, 784 P.2d 986, 990 (1989).  New Mexico law provides that the last act necessary for an agreement's formation is accomplished when a party to a

contract places the last signature on the contract.  *Conyers*, 109 N. M. at 247, 784 P.2d at 990.

Pimentel & Sons purchased the policy at issue through the Kinney Agency in Albuquerque, New Mexico.  (Pl. Am. Compl. Ex. A.)  Continental issued the policy in Texas and forwarded the policy to the Kinney Agency in New Mexico.  (Pl. Reply Ex. C.)  The Kinney Agency countersigned the policy in New Mexico for Pimentel & Sons.  (*Id*.)  Because the last signature necessary for the formation of the contract was affixed in New Mexico, the law of New Mexico governs interpretation of the policy.  *Conyers*, 109 N. M. at 247, 784 P.2d at 990.  This conclusion is bolstered by the fact that the policy contains a New Mexico endorsement, indicating that the parties intended and were on notice that New Mexico law would apply to interpretation of the policy. (Pl. Am. Compl. Ex. A.)


**B.      New Mexico Law Regarding Duty to Defend.**

An insurer's duty to defend is independent of its duty to indemnify.  *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 642 P.2d 604 (1982).  The duty to defend arises out of the nature of the allegations of the complaint brought against the insured; the existence and scope of the duty are determined by comparing the factual allegations of the complaint with the language of the insurance policy's coverage provisions.  *Lopez v. N.M. Pub. Schs. Ins. Auth.*, 117 N. M. 207, 209, 870 P. 2d 745, 747 (1994); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 985 (10th Cir. 1994).

The factual allegations in the complaint must be construed in favor of the insured.  *Valley Improvement Ass'n, Inc. v. U. S. Fidelity Guar. Corp.*, 129 F. 3d 1108, 1116-17 (10th Cir. 1997).  Any doubts about whether the allegations are within policy coverage are resolved in favor of the insured.  *State Farm Fire & Cas. Co. v. Ruiz*, 36 F.Supp.2d 1308, 1312 (D. N.M. 1999).  If the allegations on the face of the complaint are potentially or arguably within the scope of coverage, the

insurer is obligated to defend. *American Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N. M. 741, 744, 799 P.2d 1113, 1116 (1990); *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F.Supp. 822, 829 (D. N.M.1994). The duty to defend continues until the insurer establishes that none of the claims are covered. *Lopez*, 117 N.M. at 211, 870 P.2d at 749.

**C.     Whether the Claims Against the Pimentels Fall Within the Policy Definition for Personal and Advertising Injury.**

The applicability of advertising injury coverage to a variety of torts has been the subject of numerous cases in federal courts. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 747 (3[d] Cir.1999). Although insurance coverage issues are governed by state law, much of this jurisprudence has developed in the federal courts sitting in diversity jurisdiction. *Zurich Ins. Co. v. Amcor Sunclipse North America*, 241 F.3d 605, 608 (7th Cir. 2001). The New Mexico Courts have not spoken on this issue. In the absence of precedent from the New Mexico Courts, a federal court sitting in diversity may consider the case law of other jurisdictions that have examined similar policy provisions. *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 378 (5th Cir. 1997). The objective is to determine the issues of state law as the New Mexico Supreme Court would.

The policy[2] in question provides in pertinent part: "Coverage B Personal and Advertising Injury . . . we will pay those sums that the insured becomes legally obligated to pay as a result of 'personal and advertising injury' to which this insurance applies." (Am. Compl. Ex. A, CGL Coverage Form § I (B)(1)(a)). The policy defines personal and advertising injury as arising out of one or more

_____

[2] The wording of the advertising injury clauses in CGL policies has evolved over time. *See State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230-31 (11th Cir. 2004). Much of the case law analyzes earlier versions of policy language.

of the following offenses:

> (a) False arrest, detention or imprisonment;
> (b) Malicious prosecution;
> (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> (d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> (e) Oral or written publication, in any manner, that violates a person's right to privacy;
> (f) The use of another's advertising idea in your 'advertisement;' or
> (g) Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'

(Am. Compl. Ex. A, CGL Coverage Form § V (14)).

"Advertisement means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters . . ." (Am. Compl. Ex. A, CGL Coverage Form § V (1)).

The Tenth Circuit has held that an "advertising injury" exists, and the insurer has a duty to defend the insured, if there is an injury arising solely out of one or more of the categorized offenses committed by the insured in the course of promoting its goods, products, or services. *Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 986 (10th Cir. 1998). In analyzing whether the claims against the insured triggered a duty to defend, the Court must first examine whether the claims alleged a predicate offense, i.e., one of the offenses specifically listed in the definition of "advertising injury." *Id.* Second, the court must examine whether there was a causal connection between the alleged injuries and the insured's advertising activities. *Id.*

The Pimentels argue that the claims against them qualify as the use of another's advertising idea in an advertisement or infringement upon another's copyright, trade dress or slogan in an

10

advertisement.  The Pimentel Co-defendants claim, inter alia, that Pimentel & Sons used the mark, PIMENTEL MUSIC, to promote its own business in a weekly entertainment publication, knowingly traded on the reputation of good will of the Hector Pimentel Marks, and attempted to pass off entertainment services under the Hector Pimentel Marks with the intent to deceive the public.

Allegations that an insured traded on a recognizable name or mark are sufficient to qualify as the use of another's advertising idea. *Frog, Switch & Mfg. Co.*, 193 F.3d at 751 n. 8; *see also  Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1189-91 (11th Cir. 2002).  In addition, the facts alleged in the counterclaims and third party complaint indicate that Pimentel & Sons infringed on the Pimentel Co-defendants' slogans.  *Cincinnati Ins. Co. v. Zen Design Group, Ltd.,* 329 F.3d 546, 557 (6th Cir. 2003).  The use of the mark, PIMENTEL MUSIC, in *Alibi* qualified as an advertisement under the policy definitions.  Because the Pimentel Co-defendants alleged that Pimentel & Sons used the PIMENTEL MUSIC mark in an advertisement, the counterclaims alleged a predicate offense. The first *Novell* inquiry is satisfied.

The second step in the *Novell* analysis inquires whether there was any causal connection between the alleged injuries and the insured's advertising activities. *Novell, Inc.*, 141 F.3d at 986. The Pimentel Co-defendants allege that the use of the Hector Pimentel Marks by Pimentel & Sons in promotional activities caused diminution or loss of the marks' identity and good will.  The factual allegations in the complaint, construed in favor of the insured, fall within the policy definition for advertising injury for the purposes of the duty to defend.

**D.     Whether the Trademark Exclusion Bars Coverage.**

Coverage B contains an exclusion for advertising injury arising out of the infringement of

copyright, patent, trademark, trade secret, or other intellectual property rights. (Am. Compl. Ex. A, CGL Coverage Form § I (B)(2)(i)). However, this exclusion does not apply to infringement, in an advertisement, of copyright, trade dress, or slogan. *Id*. The Pimentel Co-defendants alleged that Pimentel & Sons infringed on the Hector Pimentel Marks in an advertisement. Thus, the trademark exclusion is inapplicable.

**E.      Whether the Knowing Violation Exclusion Bars Coverage.**

This exclusion states that coverage does not apply to advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury. (Am. Compl. Ex. A, CGL Coverage Form § I (B)(2)(a)). Despite the allegations of intentional wrongdoing, the Pimentel Co-defendants might be able to prove only negligence or some other form of unknowing wrongdoing.  In that regard, intentional wrongdoing is not a necessary element of their claims.

**F.      Whether the Breach of Contract Exclusion Bars Coverage.**

This exclusion states that coverage does not apply to advertising injury arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement. (Am. Compl. Ex. A, CGL Coverage Form § I (B)(2)(f)).  In his third party complaint, Hector Pimentel alleges that Lorenzo Pimentel, Rick Pimentel, and Robert Pimentel breached an implied contract that allowed Hector Pimentel to use the Hector Pimentel Marks, operate a portion of his business out of their business establishment, and promote the business endeavors of Hector Pimentel through a mutually beneficial relationship. Whether Hector Pimentel had a contractual obligation with the

Pimentels awaits determination in the underlying action.  Coverage is not precluded simply because a contract might have been breached.  *See Lopez*, 117 N.M. at 211, 870 P.2d at 749.

**G.     Whether the Unauthorized Use of Another's Name or Product Exclusion Bars Coverage.**

This exclusion states that coverage does not apply to advertising injury arising out of the unauthorized use of another's name or product in your email address, domain name, or metatag, or any other similar tactics to mislead another's potential customers. (Am. Compl. Ex. A, CGL Coverage Form § I (B)(2)(l)).  The counterclaims allege that Pimentel & Sons displayed the mark, PIMENTEL MUSIC, on its website. There are no allegations that the Pimentels used the Hector Pimentel Marks in an email address, domain name, or metatag, or any other similar tactics to mislead the Pimentel Co-defendants' potential customers.  In any event, the question of whether the Pimentels were authorized to use PIMENTEL MUSIC awaits determination in the underlying action.

**H.     Whether Bodily Injury Coverage Applies**

In addition to Coverage B for personal and advertising injury, Coverage A states that Continental is obligated to pay because of "bodily injury." (Am. Compl. Ex. A, CGL Coverage Form § I.)  Continental argued that the bodily injury coverage does not apply.  The Pimentels did not respond to this argument.  A review of the counter claims and third party complaint indicates that the Pimentel Co-defendants did not assert claims for bodily injury.  Thus, bodily injury coverage is inapplicable.  The motion for summary judgment should be granted with respect to bodily injury coverage.

WHEREFORE,

 **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 11), filed on April 26, 2005, is **GRANTED AS TO BODILY INJURY COVERAGE, BUT OTHERWISE DENIED**.

     _____

     **ROBERT C. BRACK**
     **UNITED STATES DISTRICT JUDGE**